Morning, your honors. My name is John Kaufman and I'm representing Loren Goldtooth. Before I start, let me thank the panel for allowing me to be here and to address the court today. And let me make just one real quick observance. It's been my experience that these ten minutes defy the laws of physics and pass quickly, and I've been told many times by your brothers and sisters that these ten minutes belong to you. So if you have any specific area that you want to go over, let me know. If not, I will launch into my discussion about the inference. Launch. Your honors, this is a case where I believe that there is an inappropriate inference that interferes with the jury considering this case and tells the jury what the court thinks about it and directs the jury exactly how it wants to address the case. This Court, when addressing these types of issues, the first thing that you always say in all of your briefs are let's take the jury instructions as a whole. Let's take a look at the instructions as a whole. From my excerpt of the records, page 26, you must follow the law as I give it to you, whether you agree with it or not. Page 27, the burden of every element of the charge rests on the government beyond a reasonable doubt. Page 28, the evidence from which you are to decide what facts – what the facts consist of are sworn testimony of any witness, the exhibits which you have received into evidence, the facts which – to which all the lawyers have stipulated. Page 29, in reaching your verdict, you may consider only the testimony and exhibits received into evidence. And then, on the only issue that is in dispute in this case, which is the issue of what, at least in counts one and two, is the issue of intent for Mr. Goldtooth. And Mr. Goldtooth proffers a defense that he's submitting the – these – these bills for ratification and approval by the TOCA board and by, eventually, the tribal council, and it's the government's claim that he's doing so with a fraudulent intent. So the only issue is what's his intent. And you take a look at this instruction, the willful – and page 43 of my – of the excerpt, the willful purpose to retain the money of another for one's own use or the jury that may be inferred from the facts and circumstances attending the act. The court specifically tells the jury that they can find the intent from the absence of Goldtooth, and that's the improper inference in this case that instructs the jury as to the only issue in the case. This Court has long addressed inferential instructions. This is not the Tenth Circuit. This is the Ninth Circuit, and the Ninth Circuit doesn't like inferences. And there are a long series of cases that go back, and there are a series of cases that hold that sometimes you can give this type of inference. And the cases that I cited in my brief, the Warren case, the Hauser case, the Beltran Garcia case, all stand for the one proposition that if you're going to use an inference, you must do so with extreme care, and you must bend over backwards in the totality of your instructions to tell the jury that it's a rebuttable presumption, that they don't have to follow the inference, and that there must be cautionary instructions that go along with it. Well, haven't we held that you can infer intent from circumstantial evidence? It's really different, Your Honor. One is one not that you can infer intent from substantial evidence. Circumstantial. Circumstantial evidence. The law is that the jury can use circumstantial evidence to find an element or as proof of an element of a case. That is completely different. You can't equate circumstantial evidence with an inference. They're two different things. One thing you can say, you know, if there's, it's for the jury to make that leap. And not for the court to sit there and say, I'm going to make that leap for you. No, no. A judge can tell a jury that they are free to make that leap. That's different from the judge saying, I infer from the evidence. If he says to them, you may infer, that's not making the leap for them. Your Honor, in this case, only one issue. And the judge tells the jury in this case that as to that one particular issue that's in dispute, you can infer his intent from his acts as produced by the government. Kennedy, how do you prove intent from, what's direct evidence of intent? Does the defendant have to say, this is what I intend? The only other way to get intent is to derive it from the facts of the case. Your Honor, I'm not objecting to that. You can prove intent by circumstantial evidence. The government can argue that they have proved intent by circumstantial evidence. But that's not what the Court said here. The Court said you can infer the element. And that's what's not proper in this case. I'm sorry, I have difficulty seeing the difference of looking at the circumstantial evidence and saying, ah-ha, that shows the intent, and saying, I infer from that evidence that he has intent. I don't really see the difference. The first is fine. The second is a judicial comment. The second is more accurate and detailed than simply saying it shows intent. And judges don't sit there and tell the jury which particular pieces of evidence that they can look at in order to derive proof beyond a reasonable doubt as to a fundamental element of the case is what's happened here. So you're objecting to the instruction, the willful purpose to retain the money of another for one's own use or the use of another is a state of mind that may be inferred from the facts and circumstances attending the act? Yes, ma'am. So if the trial court had instructed the jury, you may, but are not required to, infer, would that have cured the problem? Partially, yes. But when this ---- Did you offer a counterinstruction? I was not the trial attorney. Did the trial counsel offer a counterinstruction? No, Your Honor, the trial ---- Was this instruction objected to? Not in a real meaningful way. I mean, the trial counsel got up and said, well, gee, I don't like this instruction. Please give mine instead. Let me give you what his instruction was. His say may? Pardon? The one he wanted given. The one that he wanted given. Did it say may? No, Your Honor. It appears in the government's reply brief at page 20, or answering brief, the defendant's proposed instruction number three is the defendant's proposed definition of conversion, which includes language that the taking or exercise or dominion and control has to be unauthorized. That was his objection to it. I don't believe that it meets a ---- the appropriate standard for the court. But I do believe it's plain error in this case. He didn't offer a counterinstruction, a proposed substitute instruction that defined intent in the way you're suggesting. No, sir. Okay. Let me reserve my last minute and a half. Maybe you could try one of your other issues in the last minute and a half. The ---- I'm sure there are. Yes, sir. Good morning. May it please the Court. I'm Beverly Anderson from the District of Arizona. In this case, the defendant is challenging his conviction only as to Counts 1 and 2. What I'd like to do is begin with arguing that the defendant's argument, number 2, which defense counsel just addressed with the Court ---- You're with the U.S. Attorney's Office? Yes, sir. As was the individual who argued just before? Mr. Howe? Mr. Howe, yes, sir. Okay. And Ms. Olson is also? But that's Nevada. But you're not from the Department of Justice? No, sir. I'm from the U.S. Attorney's Office in Arizona. Okay. That's fine. That's fine. Just let me clarify that. Thank you. I'd like to start with the second argument, which is what defense counsel calls the inference. The district court did not err, much less plainly err, when it instructed the jury on the crime of conversion. Defendant claims for the very first time on appeal that the court erred when it included the last sentence in the conversion instruction, and that conversion instruction can be found at ER 43. The court included that last sentence to advise the jury that when determining the defendant's state of mind, it could look at all of the facts and circumstances attending the acts. There is very rarely direct proof of intent, and direct proof of intent is rarely available, and therefore, the courts allow finding a fraudulent intent based on circumstantial evidence. There was no err, much less plain err. The discussion for that instruction can be found at SCR 290 to 291. The – furthermore, the evidence in this case was sufficient for a reasonable juror to conclude that the defendant, who was a CPA, intended to defraud TOCA. At trial in this case, the jury properly concluded that the defendant had fraudulently received in excess of $34,000 in the form of overtime payments from TOCA. Now, in the overtime case, did he not submit something that was labeled, Request for Overtime? Yes, Your Honor, he did. And that was authorized by the employer? It was signed off by one of the board members when she – Knowing that it was for overtime? Knowing – knowing that it was for overtime. She explained in her testimony that she would often get a stack of documents 4 to 5 inches high and that she would go through and sign the documents with very little review. Well, very little. But if she didn't look at the documents at all, whatever she was given, she signed? Well, she explained that she did not look as thoroughly as she should. Not as thoroughly, but it was a document marked overtime. Did she say, I didn't know it was overtime? She indicated, Your Honor, that in SCR pages 240 to 241, she explained that she realized that it was overtime, but she didn't look closely enough at the documents. Well, she didn't have to look closely if she said she knew it was overtime. Some employees were entitled to overtime. Some were not. Mr. Goldtooth was not because he was an exempt employee. Furthermore, the board trusted Mr. Goldtooth. He was a CPA. They hired him because he was a CPA. He was a professional and quite a trustee. I trusted her, too, didn't I? I'm sorry, Your Honor. I trusted the board member to review the documents. The board members all – yes, the board members also trusted the underlying accounting staff members to compile all of the documents and review them and put them together prior to them being signed. On at least one occasion, wasn't he told when he filled out the form and gave it to Josie Chavez, didn't she tell him, you're not entitled to overtime? Yes, Your Honor. Pointed to the regulation that showed that he was not entitled to overtime, correct? Absolutely, Your Honor. And he instructed her to mark that section out on the regs that she had? Yes, Your Honor. And encouraged her to apply for overtime, whether she was entitled to it or not? Exactly. And that can be found at SER 73 to 75. He instructed her to go get the policies and procedures. She handed it to him, and he crossed out the provision that said overtime is not available for exempt employees. And he was her supervisor. She felt intimidated by him, and she indicated in her testimony that she pointed this out to him once, possibly two different occasions. And despite that, he submitted it to see if the board would approve it? Absolutely. He didn't conceal the fact that it was overtime? No, Your Honor. He did not conceal that it was overtime. He understood that this was this process was a rubber stamp. He understood that he said he understood it was a rubber stamp? No, Your Honor. But what we can infer from the evidence by his repeated being advised that overtime was not allowed, he continually submitted documents for overtime. Advised by the board? He was well, when he was first hired by TOCA. But not repeated. He didn't keep submitting it after being advised by the board. No, Your Honor. All right. So he so he, even though he knew it was not permitted under the regulations, he kept submitting it to the board, and they kept approving it. Yes, Your Honor. Yes. I would remind the Court that ratification is not a defense. It merely goes to intent. The jury properly concluded in Count II that the defendant received in excess of $17,000 in the form of personal reimbursement for personal expenses. These personal expenses came in the form of multiple trips to Las Vegas, multiple trips to Reno, Nevada, which included hotel costs, car rental costs, food, and also at one particular occasion, tickets to a rock concert. And again, the policies and procedures of the TOCA Association indicated that the defendant was entitled to reimbursement for all reasonable, ordinary, and necessary business expenses that were related to TOCA work. And that can be found at SCR-227 and SCR-228. What was his defense to these charges presented to the jury? His defense was essentially that the board signed off on these documents, that the board signed it, and therefore it was ratification, and he didn't have the intent. And again, ratification is not a defense. Ratification only goes to intent. But the trips to Tohono O'odham has gaming, correct? I'm sorry, Your Honor? The Tohono O'odham Nation has gaming, correct? Yes, they do, Your Honor. If he had taken trips to Las Vegas and Reno to entertain clients with respect to the Tohono O'odham Nation's gaming activities, would that have been permissibly reimbursed? Well, for one thing, Mr. Goldtooth was not associated with gaming. He was associated with the tohono o'odham nation's gaming activities. That's not my question. The question isn't if. I understand it's hypothetical. If he was up there dealing with things related to the tribe's gaming activities and entertaining clients, including going to concerts or athletic events, would that have been permissibly reimbursed? If the clients were related to HUD, which is what he dealt with, housing, and other funds, if they were related to HUD, it would have been. But it wasn't. Did he defend on the basis that these were legitimate business activities? No, he didn't. He merely defended on the basis that the board signed off on the expenses. And was his defense presented to the jury by the judge in the instructions were they advised of the defense? Yes, Your Honor. The defense claims in their brief that the judge never gave his theory of the case instruction. Number one, a theory of the case instruction was never requested by the defense. You will see on page 11 of the defendant's opening brief an instruction that was never submitted, never submitted to the court. Oh, no. I know it wasn't submitted. I know it wasn't requested. My question was, was it ever given? There is an instruction given, ER46, included language that was requested by the defendant. ER48, the last paragraph, was instruction that was requested by the defendant. You just told me the defendant didn't request the instruction of the theory of the defense. The defense So I asked whether it was given by the court. The defense never requested a specific instruction. No, you've said that several times. And I said I know that they didn't request it. My question to you was, was it ever given? Yes. All right. And could you tell me where that is? That's at ER46. And what does it say? ER46 says an act is done willfully if done voluntarily and intentionally with the purpose of violating a known legal duty. Also at ER48, which is the last paragraph, that instruction was given by the court. The discussion of that on the record occurs at SER 284 on the bottom of the page and picks up again on page 292. Furthermore, the court gave the instruction at ER39. The instruction that you need intent. Yes. But the court included the very last element, which reads, third, the defendant acted with the intent to injure or to violate a known legal duty. Okay. That's the need intent. And that, you think, is the theory of the defense? Yes, it is, because the the I do. That's how the, I guess, that's how the ratification gets in? That's explaining the theory of the defense, that you need the ratification excuse, excused intent. Exactly. The defense asked for an instruction that is actually consistent with theft of bank funds. And so what the court did is lifted that language from one of those instructions and included it in this case. So it's that. Those are ratification cases. Exactly. And in summation, I would just urge the Court to affirm the conviction. And thank you very much. Thank you. Again, let me just briefly say before I launch into my other argument, when the government says that ratification is not a defense, it goes to intent. Intent is one of the elements of the crime. If you don't have the intent, you don't have the crime. So let me go to the next one. There were lots of instructions that you have to have intent. Yes. Do you know of any instruction that related to the theory of the defense? No, Your Honor. The only one that relates to the theory of the defense was the one that was proffered that appears on page 20 of the government's reply brief that was not given, in which the defendant's proposed instruction number three was, which includes language that the taking or exercise and dominion of control has to be unauthorized. And of course, I gave one of the restatements definition of ratification. But there's no issue here about that's the only defense in the case. Was that argued to the jury? Yes, Your Honor. And I see that in my footnotes, I promised to give you the copies of the arguments, and I did not. But it's the only issue of the case was ratification. And so if you put all your eggs in one basket, the judge tells you, I'm going to give you your theory of the case, which he did in this case, and then doesn't give the theory, and the attorney doesn't, who tried the case, doesn't make that request, the jury never hears the theory, and all he hears is the inference. And so what was the argument is that it was plain error for the court not to instruct the jury that, what? I think I have to agree with that, but remember, when you're talking about jury instructions, you take them as a whole. And if you take them as a whole here, you're lacking. In this case, it says the judge should sui spati, instruct the jury of the theory of the case, even if the defendant fails to ask for it. Yeah. There's a Ninth Circuit case directly on points, Your Honor, United States v. Dare. And, you know, I guess that's where all our eggs are in this basket. Okay. Thank you. Thank you very much for permitting me to argue. Your Honor, may we be excused. Thank you. The case just argued is ordered submitted for decision.
judges: Schroeder, Reinhardt, Hawkins